IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRAGMATUS AV, LLC,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     Civil Action No. 11-1092-LPS-CJB
                                      )
TANGOME, INC.,                        )
                                      )
          Defendant.                  )

## REPORT AND RECOMMENDATION

Plaintiff Pragmatus AV, LLC ("Pragmatus" or "Plaintiff") filed this action for patent

infringement against defendant TangoMe, Inc. ("Tango" or "Defendant"). (D.I. 1)  Presently

pending before the Court is Defendant's Motion to Dismiss the Complaint, filed pursuant to

Federal Rule of Civil Procedure 12(b)(6) ("Motion" or "Motion to Dismiss").  (D.I. 7)  For the

reasons that follow, I recommend that Defendant's Motion be GRANTED-IN-PART and

DENIED-IN-PART.

## I.    BACKGROUND

### A.    The Parties

Plaintiff Pragmatus is a Virginia limited liability company with its principal place of

business in Alexandria, Virginia.  (D.I. 1 at ¶ 8)  Defendant Tango is a Delaware limited liability

corporation with its principal place of business in Palo Alto, California.  (*Id.* at ¶ 9)

### B.    Procedural Background

On November 3, 2011, Pragmatus commenced this action, asserting that Tango infringes

certain claims of three of its patents:  United States Patent No. 6,237,025 ("the '025 Patent"),

entitled "Multimedia Collaboration System"; United States Patent No. 6,351,762 ("the '762

Patent"), entitled "Method and System For Log-in-Based Video And Multimedia Calls"; and

United States Patent No. 7,185,054 ("the '054 Patent"), entitled "Participant Display And

Selection In Video Conference Calls".   (D.I. 1 at ¶¶ 16–21)  Pragmatus alleged that Tango

infringed these patents by (1) "making, using, offering for sale, selling and/or practicing the

inventions covered by [certain claims of the patents-in-suit], at least by providing video

conference services and products", and (2) by inducing others to infringe, or by contributing to

others' infringement of those claims, "including at least users of Tango video conference services

and products."  (*Id.* at ¶¶ 23-24, 27-28, 31-32)

In lieu of filing an Answer, on January 17, 2012, Tango filed a motion to dismiss the

Complaint pursuant to Rule 12(b)(6).  (D.I. 7)  Briefing on this motion was complete on February

13, 2012.  (D.I. 8, 10, 11)  On January 16, 2013, this matter was referred to me by Judge Leonard

P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case-

dispositive motions.  (D.I. 15)

## II.    LEGAL STANDARD

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).  When presented with a Rule 12(b)(6) motion to

dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).[1]  First, the court separates the factual and legal

---

[1]      In a patent case, a motion to dismiss for failure to state a claim is reviewed under
the law of the regional circuit. *In re Bill of Lading Transmission and Processing Sys. Patent
Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). However, although Federal Circuit decisions on
such issues are not considered binding, courts have considered the reasoning in those cases as
strongly persuasive authority. *See, e.g., Joao Control & Monitoring Sys. of California, LLC v.*

elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

---

*Sling Media, Inc.*, No. C-11-6277 EMC, 2012 WL 3249510, at *4 n.1 (N.D. Cal. Aug. 7, 2012); *Conte v. Jakks Pac., Inc.*, No. 1:12-cv-0006 LJO GSA, 2012 WL 3069971, at *2 n.1 (E.D. Cal. July 27, 2012). To the extent that Federal Circuit caselaw is cited in this Report and Recommendation with regard to the Motion, it is not because the Court has treated that case law as binding. Instead, it is because the Court has found the reasoning of those cases persuasive when considering them in light of Supreme Court precedent, the law of the regional circuit (here, the Third Circuit) and the related decisions of this Court.

U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).[2]

## III.   DISCUSSION

Defendant's Motion alleges that Plaintiff has insufficiently pled claims of direct and indirect infringement. The Court will consider these arguments in turn.

### A.   Direct Infringement

#### 1.   Standards Regarding Sufficiency of Allegations of Direct Infringement

For a party to be held liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012). In the context of method claims, this means that "the accused infringer must perform all the steps of the claimed method, either personally or through another acting under his direction or control." *Id*. Thus, "[a]bsent an agency relationship between the actors or some equivalent . . . a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement even if the parties have arranged to 'divide' their acts of infringing conduct for the specific purpose of avoiding infringement liability." *Id*. (citing *Cross Med. Prods., Inc. v.*

---

[2]      Courts faced with a motion to dismiss must generally limit their consideration solely to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In this case, the patents-in-suit were attached as exhibits to the Complaint and referenced as being exhibits to that pleading as well. (D.I. 1)

*Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)).

The required form of pleading for an allegation of direct infringement in a patent case depends on whether or not the suit implicates a theory of joint infringement. *See, e.g., Eon Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534-35 (D. Del. 2011). As to a direct patent infringement claim that *does not* implicate a theory of joint infringement (sometimes referred to as an allegation of "undivided" infringement), Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure (the "Rules") sets forth a sample complaint for that claim. *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)). The United States Court of Appeals for the Federal Circuit has repeatedly held, most recently in *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012), that because an asserted claim of direct infringement that follows the dictates of Form 18 clearly passes muster under the Rules, such an allegation cannot be successfully attacked in a motion to dismiss. *Id.* at 1334 (noting that Federal Rule of Civil Procedure 84 and its accompanying Advisory Committee Notes indicate that the forms in the Appendix to the Rules satisfy the Rules' dictates as to the sufficiency of a complaint's allegations). Noting that any changes to the Rules must be obtained by amendment, not by judicial interpretation, the Federal Circuit has held that whether a complaint adequately pleads direct infringement is "to be measured by the specificity required by Form 18." *Id.* The *Bill of Lading* Court further explained that to the extent a party argues that "*Twombly* and its progeny conflict with the Forms and create differing pleading requirements, the Forms control." *Id.*

Each of the four District Judges of this Court have come to the same conclusion, finding

that a claim of "undivided" infringement is sufficiently alleged if it matches what is required by

Form 18. *See, e.g., Via Vadis, LLC v. Skype, Inc.*, Civil Action No. 11-507-RGA, 2012 WL

2789733, at *1 (D. Del. July 6, 2012); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d

559, 562 (D. Del. 2012); *St. Clair Intellectual Prop. Consultants, Inc. v. Apple Inc.*, C.A. No. 10-

00982-LPS, 2011 WL 4571812, at *2 (D. Del. Sept. 30, 2011); *Mark IV Indus. Corp. v.

Transcore, L.P.*, C.A. No. 09-418 GMS, 2009 WL 4828661, at *3-4 (D. Del. Dec. 2, 2009).

Form 18 itself simply requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the
> patent; (3) a statement that defendant has been infringing the patent 'by
> making, selling, and using [the device] embodying the patent;' (4) a
> statement that the plaintiff has given the defendant notice of its
> infringement; and (5) a demand for an injunction and damages.

*Bill of Lading*, 681 F.3d at 1334 (quoting *McZeal*, 501 F.3d at 1357); *see also Walker Digital,*

852 F. Supp. 2d at 562.

However, when a plaintiff's allegation of direct infringement *does* implicate a theory of

joint infringement, this Court has held that a plaintiff must do more. Unlike an allegation of

"undivided" infringement, in which the assertion is that a defendant performed or used each and

every step of a claimed method, a claim of joint infringement requires an assertion that various

parties perform all of the claimed steps *and* that one party exercises direction or control over the

infringing activities of all other parties. *Eon Corp.*, 802 F. Supp. 2d at 534 (citing *Desenberg v.

Google, Inc.*, 392 F. App'x 868, 871 (Fed. Cir. 2010)). Therefore, for a claim of joint

infringement, in addition to satisfying the requirements of Form 18, a plaintiff must also plead

facts sufficient to allow a reasonable inference that one party exercises the requisite "direction or

control," such that performance of every step is attributable to the controlling party. *Eon Corp.*,

802 F. Supp. 2d at 534-35; *see also Aeritas, LLC v. Alaska Air Group, Inc.*, — F. Supp. 2d —, 2012 WL 4470386, at *4 (D. Del. Sept. 28, 2012); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008).

### 2.    Sufficiency of the Complaint Pursuant to Form 18

Pragmatus asserts that its claims of direct infringement are claims of "undivided" infringement—that it alleges in the Complaint that "Tango alone performs each step of the claimed methods by (among other things) providing and conducting teleconferences through its Tango video conferencing service and products." (D.I. 10 at 5)  It therefore asserts that its direct infringement allegations need only comply with Form 18 and that they "indisputably" do so. (*Id.*)

Indeed, on its face, Plaintiff's Complaint meets the minimal requirements provided by Form 18.  First, the Complaint alleges jurisdiction in the District of Delaware because this is an action for patent infringement, and because Defendant is incorporated within this District and has committed acts of infringement here. (D.I. 1 at ¶¶ 12, 14)  Second, Plaintiff alleges that it owns the patents-in-suit. (*Id.* at ¶¶ 16-21)  Third, for each patent-in-suit, Plaintiff alleges that Defendant—Tango alone—has and continues to infringe directly "one or more claims of the [patent-at-issue] by making, using, offering for sale, selling and/or practicing the inventions covered by at least [the claim-at-issue] . . . at least by providing video conference services and products." (*Id.* at ¶¶ 23, 27, 31)  Fourth, Plaintiff alleges that it has provided Defendant with written notice of its infringement. (*Id.* at ¶¶ 24, 28, 32)  Fifth, Plaintiff makes a demand for damages. (*Id.* at 7)

These allegations are comparable in detail to those contained in Form 18 and to those that

7

have been accepted as sufficient to allege "undivided" infringement by our Court. *See, e.g.,* Fed. R. Civ. P. Form 18; *Eon Corp.*, 802 F. Supp. 2d at 532; *St. Clair*, 2011 WL 4571812, at *2-3. Absent any further argument by Tango, the Court's inquiry as to the sufficiency of these allegations would normally end here.

> ### 3.    Whether Plaintiff's Complaint Nevertheless Cannot Plausibly State a Claim of "Undivided" Infringement Because the Relevant Claims of the Patents-in-suit Can Only Be Read to Require An Allegation of Joint Infringement

> #### a.    Method of Analysis of Defendant's Motion

Defendant nevertheless argues that Plaintiff's direct infringement allegations should be dismissed, for a different reason. Noting that each of the claims asserted in the Complaint are method claims, Defendant argues that Plaintiff could not plausibly allege that Defendant performs each of the claimed steps of those methods. (D.I. 8 at 1-2)  As a result, Defendant argues that Plaintiff *must* be relying upon a joint infringement theory of liability—and since Plaintiff does not allege that Tango exercises "dominion or control" over any possible joint infringers, Plaintiff's direct infringement claims should be dismissed. (*Id.* at 2)  Plaintiff responds by simply stating that it is not alleging joint infringement and, thus, Defendant's arguments are unavailing. (D.I. 10 at 1-2)  Moreover, Plaintiff asserts that it would be premature for the Court, upon review of the Motion to Dismiss, to conclusively determine that the patents-in-suit *cannot* be infringed by Tango's actions alone. (*Id.*)  In response, Defendant argues that it is "not asking the Court to construe claims, resolve factual disputes, or grant summary judgment. Rather, it is asking the Court to review the sufficiency of [Plaintiff's] infringement allegations, because even a cursory review reveals that all of the asserted claims recite limitations that are not

and cannot be performed by [Defendant]." (D.I. 11 at 1)

The parties' respective arguments beg the question: Upon review of a motion to dismiss, how should a court analyze whether a patent's claims cannot plausibly permit an allegation of "undivided" infringement, in the face of a defendant's argument that the claims require the work of multiple, joint infringers? A number of courts have considered this issue and have set forth some analytical guideposts.

On the one side are those cases where there is no dispute that an allegation of joint infringement is required. These tend to be cases where either (1) the plaintiff affirmatively states that it intends to allege joint infringement; or (2) both parties agree that the claims require the work of joint infringers. In such cases, courts have required that, to survive a motion to dismiss, the plaintiff must allege sufficient facts (pursuant to *Twombly*, *Iqbal* and their progeny) to allow a reasonable inference that one defendant exercises "direction or control" over the acts of any joint infringers. *Eon Corp.*, 802 F. Supp. 2d at 534-35; *Friday Grp. v. Ticketmaster*, No. 4:08CV01203, 2008 WL 5233078, at *3 (E.D. Mo. Dec. 12, 2008); *Global Patent Holdings*, 586 F. Supp. 2d at 1335. This is not the circumstance at play in this case.

On the other side, however, are cases (like this one) where the parties do not agree whether the claims at issue can plausibly be read to allow for one person or entity that performs all of the steps of a claimed method. These cases tend to devolve into a dispute about what certain claim terms can and cannot mean. A number of courts have held that if such cases require a district court to construe the meaning of claim terms and perform an infringement analysis upon review of a motion to dismiss, the motion should be denied, because this type of

9

analysis is inappropriate at the pleading stage.[3] *See, e.g., Eon Corp.*, 802 F. Supp. 2d at 534 n.7;

*Fujitsu Ltd. v. Belkin, Int'l., Inc.*, 782 F. Supp. 2d at 868, 890 (N.D. Cal. 2011); *Actus, LLC v.*

*Bank of Am. Corp.*, Civil Action No. 2-09-cv-102-TJW, 2010 WL 547183, at *2 (E.D. Tex. Feb.

10, 2010); *Yangaroo, Inc. v. Destiny Media Techs. Inc.*, No. 09-C-462, 2009 WL 2836643, at *3

(E.D. Wis. Aug. 31, 2009). An infringement analysis requires, first, a "determin[ation of] the

meaning and scope of the patent claims asserted to be infringed" and second a "compari[son of]

the properly construed claims" to the accused process or device. *See, e.g., Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). These district courts have reasoned that it is

unsuitable to engage in such an inquiry upon review of a motion to dismiss, because claim

construction can be illuminated by the consideration of extrinsic evidence—evidence that is often

not before the court at that stage. *See, e.g., Fujitsu*, 782 F. Supp. 2d at 890; *Actus*, 2010 WL

547183, at *2; *Yangaroo*, 2009 WL 2836643, at *3. They also note that a claim construction

analysis at the pleading stage does not benefit from the procedures (including an exchange of

discovery documents relating to infringement, the exchange of proposed constructions and

extensive briefing) that typically precede a *Markman* hearing. *See, e.g., H-W Tech., L.C. v.*

*Apple, Inc.*, Civil Action No. 3:11-CV-651-G, 2012 WL 959316, at *7 (N.D. Tex. Feb. 23,

2012); *Fujitsu*, 782 F. Supp. 2d at 890; *Actus*, 2010 WL 547183, at *2. Moreover, it has been

---

[3]     District courts have also expressed a similar reluctance to engage in claim
construction when reviewing motions to dismiss that deal with issues other than an allegation of
joint infringement. For example, when a defendant has asserted, on a motion to dismiss, that it
cannot infringe a particular patent because its product or service does not meet a particular claim
limitation of the patent, this Court has tended to deny such motions, noting that construction of a
patent's claim terms should occur after a *Markman* hearing is held. *See, e.g., Walker Digital*,
852 F. Supp. 2d at 562-63; *Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665,
670 (D. Del. 2010).

noted that the second comparison step of an infringement analysis should not be resolved on a motion to dismiss, because it too requires the consideration of extrinsic evidence (*i.e.*, evidence regarding the accused device or process). *Fujitsu*, 782 F. Supp. 2d at 889-90.

Indeed, in its recent decision in *Bill of Lading*, the Federal Circuit commented on what role, if any, claim construction should play as part of a court's consideration of a motion to dismiss. 681 F.3d at 1343 n.13. The *Bill of Lading* Court noted that when a district court considers the plausibility of the facts alleged in a complaint, it should not "base[] its assessment of the 'reasonableness' of a given inference of infringement on a narrow construction of the patent's claims." *Id.* The Court explained that were a district court to engage in "claim construction at the pleading stage—with no claim construction processes undertaken," this would be "inappropriate," noting that "we afford the claims their broadest possible construction at this stage of the proceedings." *Id.*

Defendant, however, cites to the Federal Circuit's decision in *Desenberg v. Google, Inc.*, 392 Fed. App'x 868 (Fed. Cir. 2010). (D.I. 8 at 6) In *Desenberg*, a district court, on review of a motion to dismiss, determined that a plaintiff did not state a plausible claim of direct infringement because defendant Google did not itself perform all of the steps of the method claim-at-issue. The plaintiff, a patent holder proceeding *pro se*, had stated that he was proceeding under an "undivided" infringement theory. *Desenberg*, 392 F. App'x at 870. The claim-at-issue recited, in relevant part:

> A method for a user using a communication network to search for and identify at least one matching provider of project work, the method comprising;
>
> transmission of a lead comprising contact information that enables

11

> communication between the user and the provider, wherein the transaction
> lead price is the amount of money paid for the lead, and further *wherein a*
> *service is performed by the user or the provider as a result of the*
> *transmission of the lead* and *wherein the performance of the service*
> *includes a service transaction fee paid by the user or the provider* . . .

*Id.* (emphasis added). First, the district court found that the claim "*clearly require[s]* the

participation of multiple parties," specifically, conduct by both "users" and "providers." *Id.*

(emphasis added) (internal quotation marks and citation omitted). Second, applying the relevant

law regarding joint infringement, the district court found that a claim for direct infringement

"would require [plaintiff] to allege that Google performs both the 'user' and 'provider' steps in

the claim, which [plaintiff] has not alleged, and by the very terms of his patent, cannot

realistically allege." *Id.* at 870-71 (internal quotation marks and citation omitted).

On appeal, the plaintiff argued that the district court had erred, in that the claim did not

require multiple parties to perform separate steps of the claimed method, but instead simply

described multiple parties (including a "user") performing actions that are mentioned in the

claim's "wherein" clause. *Id.* at 871. The Federal Circuit affirmed the district court's decision,

finding that the court had "correctly concluded that the claim required performance of all of the

steps in order for infringement to lie." *Id.* The *Desenberg* Court, citing in part to an exhibit

attached to the complaint, noted that a patent examiner had required the inclusion of the

"wherein" clause as a condition of patentability; this supported the district court's conclusion that

Google could not be a direct infringer because the method clearly required a user's participation

in a manner not directed or controlled by Google. *Id.* As a result, the *Desenberg* Court upheld

the district court's decision that Google could not be a direct infringer because it did not perform

(or direct or control the performance of) all of the steps in the claimed method. *Id.*

After considering all of this authority, including the minimal requirements that Form 18 lists as necessary to state a claim of "undivided" infringement and the guidance from the *Bill of Lading* Court, I agree with the decisions of the many district courts cited above. To the extent that a defendant asserts that a direct infringement claim should be dismissed because the claim terms-at-issue require joint infringement—and the resolution of that question depends in any meaningful way on the construction of those claim terms—the motion should typically be denied as premature. To engage in the claim construction process upon review of a motion to dismiss would be to go beyond the scope of a court's traditional gatekeeping role in reviewing such a motion; it would instead amount to a more in-depth evaluation of the merits of a plaintiff's case. *See Fujitsu*, 782 F. Supp. 2d at 890 ("If the Court were to construe the Ozawa Patent's claims at the motion to dismiss stage, it would be starting the process of evaluating the merits of Fujitsu's case."). In such a case, so long as a plaintiff has satisfied Form 18's requirements, it has set forth a legally sufficient, plausible claim of direct infringement. I read *Desenberg* simply as allowing that there may be certain (perhaps rare) cases where the facts of record at the pleading stage will so clearly and explicitly indicate that an "undivided" claim of direct infringement cannot stand—in a manner that could not plausibly be challenged at a later claim construction hearing—that dismissal will be appropriate. *See, e.g., Paltalk Holdings, Inc. v. Sony Computer Ent. Am., Inc.*, No. 2:09-CV-274-DF-CE, 2010 WL 3816436, at *1 (E.D. Tex. Sept. 27, 2010) (distinguishing *Desenberg* as a case involving a "claim amendment [that] *explicitly required* a service to be provided by someone other than the defendant, while the complaint alleged that the defendant performed all of the steps by itself") (emphasis added).

**b.     The Claims-at-issue**

13

With that method of approaching this legal issue in mind, the Court turns to the

Defendant's arguments as to why Plaintiff's direct infringement claims should be dismissed.  The

Court finds that, as written, the challenged claims do not so clearly and explicitly require the

work of joint infringers so as to warrant dismissal.

Defendant first focuses on asserted Claim 33 of the '025 Patent.  (D.I. 8 at 7-8)  Claim 33

of the '025 Patent provides:

> A method *for conducting a teleconference among a plurality of
> participants*, each having an associated video capture and display and
> audio capture and reproduction capabilities, the method comprising the
> steps of:
> (a) maintaining
>   (i) at least one directory, including
>     (1) a list of potential participants; and
>   (ii) at least one database, including
>     (1) addresses of video display devices, and
>   (iii) an association
>     (1) between the information in the directory and the
>     database;
>     (2) in which the association is dynamically changeable;
> (b) displaying
>   (i) participant information from at least the directory
> (c) *selecting*
>   *(i) one or more participants*
>     *(1) from among the displayed participant information*; and
> (d) establishing communication
>   (i) with each selected participant
>   (ii) using information in the database.

('025 Patent, col. 46:9-32 (emphasis added))  Defendant argues that Plaintiff "could not

plausibly" "allege that Tango selects the participants for a conference call" because "[t]he claim

specifies that a participant in the conference call must perform the 'selecting' step, and there is

not and cannot be an allegation that Tango is a participant in the calls at issue." (D.I. 8 at 7-8)

Instead it asserts that Defendant's users, not Defendant, must perform those steps. (*Id.* at 8)

Plaintiff responds by comparing this case to that of *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 694 (D. Del. 2011). (D.I. 10 at 10-11) In *Leader Techs.*, this Court denied defendant Facebook's post-trial renewed motion for judgment as a matter of law, in a case where Facebook had argued that certain claims-at-issue required the interaction of Facebook's users. 770 F. Supp. 2d at 695. In essence, Facebook asserted that if infringement of these claims had occurred, the claims required that it be joint infringement (via a combination of actions by Facebook and its end users), and that the evidence at trial had not established that Facebook "directed or controlled" the actions of its end users so as to support a finding of joint infringement. *Id.* at 694. In that case, one independent claim-at-issue recited:

> A computer-implemented method of managing data, comprising computer-executable acts of:
>
> *creating data within a user environment of a web-based computing platform via user interaction with the user environment by a user using an application, the data in the form of at least files and documents* . . . .
>
> dynamically updating the stored metadata with an association of the data, the application, and the second user environment *wherein the user employs at least one of the application and the data from the second environment.*

*Id.* at 695 (emphasis in original). This Court found that when the highlighted portions of the claim were read in context, specifically, when read in relation to the claim's preamble requiring "computer-executable acts," it was clear that "there is no requirement of user interaction recited in the claim. Rather [the claim] claims the back-end process performed by [Facebook's] source code." *Id.* at 695-96 (internal citation omitted). This Court denied Facebook's motion, finding that plaintiff's trial evidence demonstrated that Facebook's source code performed each element

of the claimed method. *Id.* at 696.

*Leader Techs.* is, of course, a (1) different case; (2) involving a different method claim; and (3) an opinion issued at a different stage of the proceeding than that here. It does indicate, however, that even claims that prominently include specific reference to a user—claims that might, at first blush, appear to require that the user performs certain steps of the claimed method—may not ultimately be found to contain that requirement. And in this case, as to the "selecting" step-at-issue in the '025 Patent, the wording of the step itself does not conclusively establish whether the participant (as opposed to, as alleged here, Tango's software) plays a role in the performance of that step. Such a conclusion may have been easier to draw at this stage if the steps-at-issue were to have read "selecting, by a participant . . . ." or to have contained words to that effect.[4] It may well be, as Defendant argues, that its users must do the "selecting" with regard to these claims. However, in line with the case law cited above, the Court finds that claim construction is the appropriate time to construe the meaning of these "selecting" terms.

The Defendant next argues that the '762 Patent recites at least an "initiating" step that Defendant does not perform. (D.I. 8 at 8-9) Claim 11 of the '762 Patent recites:

A method of *conducting a teleconference among a plurality of*

---

[4]     *Cf. Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F. Supp. 2d 928, 936 (N.D. Ill. 2010) (denying defendant's motion for summary judgment, where defendant asserted that a method claim requiring "initiating a message from a message originator to a message recipient" required the conduct of the message originator, on grounds that the claim did not clearly require this, and noting that had the claim recited "initiating, by a message originator, a message," the proffered limitation would have been clear); *PA Advisors, LLC v. Google, Inc.*, 706 F. Supp. 2d 739, 748 (E.D. Tex. 2010) (granting defendants' motion for summary judgment on grounds that claim required joint infringement, with regard to claim step that required the "providing, by the user to the local computer system, search request data," in significant part because the claim made it explicit that the "providing" step must be performed "by the user").

*participants* using workstations with associated monitors for displaying visual images, and with associated AV capture and reproduction capabilities for capturing and reproducing video images and spoken audio of the participants, the method comprising the steps of:

(a) associating first and second participants only with each workstation logged into by a first and a second participant;

*(b) initiating a call from the first to the second participant;*

(c) routing the initiated call to each and only each workstation at which the second participant is logged in;

(d) capturing participant video images and audio of the first and second participants;

(e) carrying AV signals representing the captured video images and spoken audio of the participants along an AV path among workstations associated with the first and second participants; and

(f) managing a videoconference during which the video image and spoken audio of the first participant is reproduced at the workstation of the second participant.

('762 Patent, col. 43:1-22 (emphasis added)) Defendant argues that, with respect to the

"initiating" step, "claim 11 requires that a user (participant) must place the call." (D.I. 8 at 9)

For its part, Plaintiff asserts that the "initiating" step, as set forth in Claim 11 itself, is

"agnostic as to who does the initiating," and that it is at least plausible, depending on how the

term "initiating" is construed, that Tango video conference services and products "initiate a

teleconference for users just as a telephone company initiates a phone call for someone making a

call." (D.I. 10 at 9-10) The Court agrees that the determination of this question is more

appropriately examined at the *Markman* stage, as the step at issue does not explicitly require the

participation of Defendant's users. *Cf. Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F.

Supp. 2d 928, 936 (N.D. Ill. 2010); *PA Advisors, LLC v. Google, Inc.*, 706 F. Supp. 2d 739, 748

(E.D. Tex. 2010).

Lastly, Defendant argues that Plaintiff has not properly pled that Tango infringes asserted

17

Claim 10 of the '054 Patent.  (D.I. 8 at 9-10)  Claim 10 recites:

> A method for conducting a teleconference among a plurality of
> participants, each having an associated video capture and display and
> audio capture and reproduction capabilities, the method comprising the
> steps of:
>
> (a) displaying a graphical rolodex on a participant's video display device,
> including a scrollable listing of entries of video-enabled potential
> participants;
>
> (b) displaying a quick dial list on the participant's video display device
> and listing icons representing video-enabled potential participants copied
> from the graphical rolodex[;]
>
> (c) allowing *an initiating participant to initiate collaboration by selecting
> at least one participants* listed in at least one of the graphical rolodex and
> quick dial list; and
>
> (d) automatically establishing one of a plurality of communication types
> with *a selected participant upon a communication type being selected* or
> by default *when the participant is selected.*

(D.I. 11 at 6-7 (emphasis in original))  Specifically, Defendant argues that "steps (c) and (d)

require that the call be established with a participant who has already been selected by the

initiating participant." (*Id.* at 7)

Here, it is not now clear to the Court that it would be implausible for a product or service

like Tango's software to (as step (c) requires) "*allow[]* an initiating participant to initiate

collaboration" in the manner further described in that step.  In other words, it seems at least

plausible, as Plaintiff argues, that the claim step could be performed when a product or service

simply *allows* an initiating participant to initiate such collaboration—and that the remainder of

the claim's language does not require the work of a second, joint infringer to perform the step.

Similarly, it seems plausible that step (d) could be performed only when one of a plurality of

communication types are *established* by such a product or service, in a manner that does not

18

require a joint infringer's conduct to perform the step. As a result, the Court finds that the allegation regarding direct infringement of the '054 Patent should not now be dismissed.

### 4. Conclusion

Ultimately, as discussed above, the Court finds that Defendant's arguments as to dismissal are premature. Thus, the Court recommends that Defendant's motion to dismiss as to Plaintiff's allegations of direct infringement be denied.

### B. Indirect Infringement

In its Complaint, Plaintiff makes nearly identical allegations of indirect infringement as to each of the patents-in-suit:

> Tango has and continues to infringe indirectly one or more claims of the [relevant Patent] by inducing others to infringe and/or[5] contributing to the infringement by others of at least [claim number] of the [relevant Patent], including at least users of Tango video conference services and products. Tango has notice and knowledge of its infringement at least via a notice letter sent by Pragmatus, dated October 31, 2011. Tango's infringement is continuing. See, e.g., http://tango.me/

(D.I. 1 at ¶¶ 24, 28, 32) Defendant argues that Plaintiff's claims of induced infringement and contributory infringement are insufficient because Plaintiff has failed to adequately plead the

---

[5]    Plaintiff's use of the phrase "and/or" is disfavored by our Court, as the use of that phrase in this context does not give a defendant (or the Court) a clear indication as to whether a plaintiff intends to plead induced infringement, contributory infringement or both. *E. I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *7 n.5 (D. Del. Sept. 28, 2012) (citing *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 n.11 (D. Del. 2010)). In its briefing, Plaintiff indicates that it intended to allege both induced infringement and contributory infringement, (D.I. 10 at 15-18), and the Court thus considers the sufficiency of the Complaint's claims with this statement in mind.

requisite knowledge and intent required to properly assert such claims.[6] (D.I. 8 at 10)

### 1.    Inducement

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be

liable as an infringer." In order to demonstrate inducement of infringement, the patentee must

establish, first, that there has been direct infringement, and second, that the alleged indirect

infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech*

*Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also Walker Digital*, 852 F. Supp.

2d at 563. The alleged infringer must "knowingly induce[] infringement and possess[] specific

intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

1306 (Fed. Cir. 2006) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*

*Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). Accordingly, "[i]nducement requires evidence of

culpable conduct, directed to encouraging another's infringement, not merely that the inducer had

knowledge of the direct infringer's activities." *Id.*; *see also Walker Digital*, 852 F. Supp. 2d at

563.

Unlike with an allegation of direct infringement, where the content of Form 18 controls

---

[6]       In its opening brief, Defendant also argued that Plaintiff's indirect infringement
claims were insufficient because they failed to identify a purported direct infringer. (D.I. 8 at 10-
11) However, in its reply brief, Defendant appears to concede that Plaintiff's identification of the
users of Tango video conference services and products as the purported direct infringers sufficed
to withstand a motion to dismiss. (D.I. 11 at 9) In any event, even if Defendant were still
pressing this issue, the Court would not recommend dismissal of the claims on this basis, as the
identification of these users, in the context provided by the Complaint, was sufficient to allow an
inference that at least one direct infringer exists. *See Bill of Lading*, 681 F.3d at 1336 ("[A]
plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an
inference that at least one direct infringer exists.") (emphasis in original); *see also Lone Star
Document Mgmt., LLC v. Atalasoft, Inc.*, Civil Action No. 2:11-CV-00319-JRG, 2012 WL
4033322, at *4 (E.D. Tex. Sept. 12, 2012).

for purposes of measuring the sufficiency of the allegation, there are no forms in the Federal Rules of Civil Procedure relating to indirect patent infringement claims. As a result, the Federal Circuit and our Court have emphasized that the "general principles of *Twombly* and *Iqbal* must be applied to indirect infringement claims." *Bill of Lading*, 681 F.3d at 1337 (internal quotation marks and citations omitted); *see also Pragmatus Telecom, LLC v. Ford Motor Co.*, Civil Action No. 12-92-RGA, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (requiring that, as to indirect infringement claims, "facts [be] alleged from which one could infer that the allegation is plausible"); *Investpic, LLC v. FactSet Research Sys., Inc.*, Civ. No. 10-1028-SLR, 2011 WL 4591078, at *1 (D. Del. Sept. 30, 2011) (noting that a plaintiff pleading an indirect infringement claim must state facts in support of that claim, not just legal conclusions). Therefore, in order for an inducement claim to survive a motion to dismiss, the complaint must contain facts "plausibly showing that [the alleged indirect infringer] specifically intended [the direct infringers] to infringe [the patent-at-issue] and knew that the [direct infringer's] acts constituted infringement." *Bill of Lading*, 681 F.3d at 1339; *see generally E. I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-SLR-CJB, 2012 WL 4511258, at *4-7 (D. Del. Sept. 28, 2012).

Defendant argues that Plaintiff's inducement claims are insufficient in that it has not adequately plead knowledge "that the induced acts constituted patent infringement [or that Defendants] took affirmative steps with the specific intent to induce another's infringement." (D.I. 8 at 11; *see also* D.I. 11 at 9-10) As to the knowledge prong, Plaintiff argues that it has "established Tango's prior knowledge" of infringement because, in each of the three counts of the Complaint (which correspond to the respective allegations of indirect infringement as to each

21

of the three patents-in-suit), Plaintiff asserts that "'Tango ha[d] notice and knowledge of its

infringement at least via a notice letter sent by [Plaintiff], dated October 31, 2011.'" (D.I. 10 at

17 (citing D.I. 1 at ¶¶ 24, 28, 32)) As to its allegations that Defendant possessed the specific

intent to induce infringement, Plaintiff asserts that "because [it] averred that Tango continued to

infringe after Pragmatus' written notice," it has properly pled sufficient facts to satisfy the intent

requirement. (*Id.*)

In *Bill of Lading*, the Federal Circuit reviewed the sufficiency of a plaintiff's indirect

infringement claims, which included inducement claims. 681 F.3d at 1337-47. The claims were

brought against a group of defendants who were alleged to have indirectly infringed a method

patent that "enable[d] shipping documents to be sent directly from [a] truck driver to a common

point [a process known as 'in-cab scanning'], such as a terminal, so billing and load planning

[regarding the freight in the truck] can occur while the driver is en route with the freight." *Id.* at

1329. The *Bill of Lading* Court ultimately found that the complaints-at-issue did not merely

contain "a formulaic recitation of a cause of action's elements," but instead sufficiently alleged

that the defendants knew that their customer's acts constituted infringement and specifically

intended their customers to infringe the patent-in-suit. *Id.* at 1339, 1346 (internal quotation

marks and citation omitted). This was because the various complaints-at-issue (and their

attachments) contained specific factual allegations not only concerning when defendants became

aware of the patent-in-suit, but also as to:

> (1) Certain defendants' advertising statements relating to their products'
> ability (including when used in conjunction with certain software) to scan
> and transmit documents in a manner similar to the patented method; and/or
>
> (2) A defendant's use of seminars targeted toward existing and potential

customers to demonstrate how its products could be used in this way; and/or

(3) Statements from an identified customer of certain defendants that the customer used the alleged indirect infringers' products to achieve goals similar to those intended to be accomplished by the use of the patented method.

*Id.* at 1340-46. The court found that these allegations, when considered in the context of the technology disclosed in the patent-at-issue and of the relevant industry, made it plausible to infer that the defendants intentionally induced infringement of the patent-at-issue. *Id.*

Here, unlike in *Bill of Lading*, there are not sufficient facts alleged with specificity in the Complaint to support the plausible inference that Tango had knowledge that its users' actions constituted infringement of the respective patents-in-suit. The only fact that Plaintiff points to in this regard is the general assertion in each count that Plaintiff provided Tango with "notice and knowledge of its infringement at least via a notice letter sent by Pragmatus, dated October 31, 2011." (D.I. 10 at 17 (citing D.I. 1 at ¶¶ 24, 28, 32)) Although this allegation does indicate when that notice was provided to Tango, it does not allege any facts regarding the substance of that notice. The Court is left to speculate as to what it was about that notice that could have plausibly provided Tango with the requisite knowledge of its users' infringement. *See, e.g., MONEC Holding AG v. Motorola Mobility, Inc.*, — F. Supp. 2d —, 2012 WL 4340653, at *8 (D. Del. Sept. 20, 2012) (finding that lack of factual content pled regarding knowledge that induced acts constitute patent infringement warranted dismissal of inducement claim); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) (dismissing inducement claim where the amended complaint did not "suppl[y] any factual accompaniment that would convert the post-suit knowledge into a plausible allegation of

knowledge of the infringing use"); *HSM Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770-RGA, 2012 WL 2580547, at *1 (D. Del. July 3, 2012) (finding allegation that purported indirect infringer was "placed on notice of its infringement" as of a particular date insufficient because those allegations of knowledge were otherwise "wholly unsupported by any factual allegations" and finding that an allegation "that the defendant was on notice of a patent as of a certain date is insufficient to provide a factual basis for alleging knowledge").

Similarly, there are insufficient facts alleged to lead to the plausible inference that Tango specifically intended its users to infringe the patents-in-suit. The Complaint merely contains the formulaic statement that Tango "has and continues to infringe indirectly . . . [the patents at issue] by inducing others to infringe . . . including at least users of Tango video conference services and products." (D.I. 1 at ¶¶ 24, 28 ,32) These allegations contain no factual assertions that go to Tango's specific intent to induce and encourage infringement—no factual allegations, for example, about the nature of the relationship between Defendant and its users, nor about how the use of Tango video conference services and products relates to the patented methods referenced in the claims of the patents-at-issue. To the extent that Plaintiff relies on the bare fact that Tango continued to make Tango video conference services and products available to its users after Plaintiff provided Tango with the afore-mentioned written "notice" of infringement, the lack of any factual content alleged regarding the substance of that notice provides the Court with no basis to infer that Defendant, after receiving the notice, could have specifically intended for its users to continue infringing the patents. The law requires more. *See, e.g., MONEC*, 2012 WL 4340653, at *8 (finding that plaintiff's "conclusory averments" that defendant "s[old], advertis[ed], suppli[ed] and instruct[ed] its respective customers on the use of the infringing

24

product" were insufficient to establish specific intent); *Pragmatus Telecom*, 2012 WL 2700495,

at *1 (dismissing an inducement claim where "[s]pecific intent [was] alleged generally," but

"[n]o facts [were] alleged from which one could infer that the allegation [wa]s plausible").[7]

    For these reasons, I recommend that Defendant's motion to dismiss as to induced

infringement be granted.

## 2.    Contributory Infringement

Under 35 U.S.C. § 271(c), a contributory infringer is one who:

> offers to sell or sells within the United States or imports into the United
> States a component of a patented machine, manufacture, combination or
> composition, or a material or apparatus for use in practicing a patented
> process, constituting a material part of the invention, knowing the same to
> be especially made or especially adapted for use in an infringement of such
> patent, and not a staple article or commodity of commerce suitable for
> substantial noninfringing use.

*See also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Therefore,

similar to inducement, Section 271(c) requires a showing that the alleged contributory infringer

"knew that the combination for which its components were especially made was both patented

---

[7]    If the Supreme Court's requirement that a plaintiff plead more than "labels and conclusions or a formulaic recitation of the elements of a cause of action," but instead "factual content that allows the court to draw [a] reasonable inference" of liability, *Iqbal*, 556 U.S. at 678, has meaning, then a plaintiff must allege more than Pragmatus has here. Specifically, in this context, "[t]o survive [Defendant's] motion to dismiss . . . [Plaintiff's complaint] must contain facts plausibly showing that [Defendant] specifically intended their [users] infringe the [patents-at-issue] and knew that the [user's] acts constituted infringement." *Bill of Lading*, 681 F.3d at 1339; *cf. Hand Held Prods., Inc. v. Amazon.com, Inc.*, C.A. No. 12-CV-00768-RGA-MPT, 2013 WL 507149, at *5-6 (D. Del. Feb. 6, 2013) (finding plaintiff's allegations regarding specific intent to induce infringement sufficient where plaintiff alleged, *inter alia*, that defendants provided instructions to customers to read barcodes in an infringing manner and/or encouraged customers to use infringing barcode scanning features through their marketing activities). The Court does not believe that Pragmatus has pled such facts here.

and infringing and that defendant's components have no substantial non-infringing uses." *Id.* (internal quotation marks and citations omitted); *see also Walker Digital,* 852 F. Supp. 2d at 566. When pleading a claim of contributory infringement, a plaintiff has an obligation to provide facts that allow a reasonable inference that all elements of a contributory infringement cause of action are plausible. *Bill of Lading,* 681 F.3d at 1337 ("[A] district court [is] required to analyze the facts plead in the . . . complaint[] and all documents attached thereto *with reference to the elements of a cause of action for contributory infringement . . . .*") (emphasis added); *Pragmatus Telecom,* 2012 WL 2700495, at *1. This includes the requirement that the alleged contributory infringer knew that the combination for which its components were especially made was both patented and infringing, and that those components have no substantial non-infringing use. 35 U.S.C. § 271(c); *Bill of Lading,* 681 F.3d at 1337-38; *E.I. Du Pont,* 2012 WL 4511258, at *8-9; *Pragmatus Telecom,* 2012 WL 2700495, at *1.

Defendant argues that Plaintiff's claims of contributory infringement are insufficient because they are silent as to these necessary elements. (D.I. 8 at 11-12) Plaintiff responds that it has properly plead contributory infringement because it "identified a Tango products that are used by third-parties to directly infringe (Tango video conference services and products)," it "unambiguously pled prior knowledge of the patents-in-suit" and it pled that it had provided Tango with written notice of its infringement. (D.I. 10 at 16-17)

Plaintiff's pleadings contain insufficient factual allegations to support a plausible claim of contributory infringement. Plaintiff was required to sufficiently plead facts plausibly establishing that Tango had the requisite knowledge that Tango video conference services and products were especially made or especially adapted for use in an infringement of the patents-in-suit and that

Tango video conference services and products had no substantial non-infringing use. However, the Complaint fails to reference these legal elements. Moreover, the Complaint provides no detail that would flesh out the factual underpinnings supporting such elements even had they been asserted. *See HSM Portfolio*, 2012 WL 2580547, at *1. Nor can the bare allegation that Defendant's users infringe the patents-in-suit save Plaintiff's claim. (*See* D.I. 1 at ¶¶ 24, 28, 32) The mere allegation that Tango video conference services and products may be used to infringe is not sufficient to allow a reasonable inference that, *inter alia*, these services and products have *no* substantial noninfringing uses. *See Bill of Lading*, 681 F.3d at 1337-38 (disagreeing with plaintiff's argument that it sufficiently plead contributory infringement when it alleged that "as customized" the defendants' products have no substantial non-infringing use); *Classen Immunotherapies, Inc. v. Biogen IDEC*, Civil No. WDQ-04-2607, 2012 WL 1963412, at *10 (D. Md. May 30, 2012).

For these reasons, I also recommend that Plaintiff's complaint as to contributory infringement be dismissed. *See, e.g.*, *E. I. Du Pont*, 2012 WL 4511258, at *9 (failure to reference elements of a contributory infringement claim, or to make sufficient factual allegations regarding those elements, warranted dismissal of claim); *MONEC*, 2012 WL 4340653, at *8 (same); *Pragmatus Telecom*, 2012 WL 2700495, at *1 (finding that "bare bones" nature of allegation of contributory infringement, supported by "no facts," warranted dismissal of that claim).

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT-IN-PART and DENY-

IN-PART Defendant's Motion to Dismiss (D.I. 7). Specifically, I recommend that the court

DENY Defendant's motion as it pertains to Plaintiff's allegations of direct infringement, but that

it GRANT Defendant's motion as it pertains to Plaintiff's allegations of indirect infringement

without prejudice.[8]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the

loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874,

878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: February 13, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[8] Plaintiff suggested the potential for a cure of any pleading deficiencies by amendment of the Complaint. (D.I. 10 at 17-18) In such cases, the Court should "freely give leave" to amend, when requested, when justice so requires. Fed. R. Civ. P. 15(a)(2). As there is no pending motion pursuant to Rule 15, however, the Court declines to consider such a request at this stage. *MONEC*, 2012 WL 4340653, at *10 n.12.